Argued and submitted October 9, 1981, reversed and
remanded for further proceedings April 26, 1982

PORTLAND GENERAL ELECTRIC COMPANY,
*Plaintiff,*

*v.*

CONSTRUCTION CONSULTING ASSOCIATES,
*Defendant and Third Party Plaintiff-Appellant,*

*v.*

PETER KIEWIT SONS' CO.,
*Third Party Defendant-Respondent.*

(No. A7908-04034)

PETER KIEWIT SONS' CO.,
*Plaintiff-Respondent,*

*v.*

CONSTRUCTION CONSULTING ASSOCIATES,
*Defendant-Appellant.*

(No. 7908-04204, CA A20394)

643 P2d 1334

Michael A. Lehner, Portland, argued the cause for appellant. With him on the briefs were Bruce L. Mowery and Hershiser, Mitchell, Mowery, Olson, Gheen & Lehner, Portland.

Emil R. Berg, Portland, argued the cause for respondent. On the brief were William A. Davis, and Wolf, Griffith, Bittner, Abbott & Roberts, Portland.

Before Gillette, Presiding Judge, and Young, Judge, and Roberts, Judge Pro Tempore.

GILLETTE, P. J.

Summary judgment for Peter Kiewit Sons' Co. reversed; remanded for further proceedings.

### GILLETTE, P. J.

The present case arose from a personal injury suffered by a workman when he fell in a hole on the construction site of the Willamette Center in Portland. Portland General Electric Company (PGE), the general contractor for the construction project, had retained Construction Consulting Associates (CCA) to assist in administration and coordination of the work of the various subcontractors. As part of its contract with PGE, CCA accepted responsibility for safety on the project in all areas not under the control of a subcontractor. Peter Kiewit Sons' Co. (PKS), one of those subcontractors, was hired to do all concrete work on the project. Steven Hansmann, whose injury gave rise to the present appeal, was an employe of ABC Roofing Company, another subcontractor on the project.

While PKS was working on the project, its employes made a hole at the work site. PKS covered that hole before it left the area. At some point, the plywood cover was cleated and painted with orange fluorescent paint. An OSHA warning sign was also placed on the hole cover. Approximately two months after PKS had completed its duties in the area, Hansmann was working there. While picking up lumber in the area, he took the cover off the hole and fell in.

Hansmann sued PGE and PKS, alleging that both were negligent under the provisions of the Employer's Liability Act, because they failed to take every practicable care and precaution to remove the risk of danger. Specifically, he alleged that they were negligent in 1) failing to warn; 2) failing to cleat the plywood cover; 3) failing to guard the opening; and 4) failing to comply with the Oregon Safety Code. These claims were settled prior to trial when PGE paid Hansmann $25,000 and obtained a release for PKS.

PGE then filed an action for indemnity against CCA.[1] CCA, in turn, joined PKS as a third party defendant in the indemnity action. In answer to CCA's third party

---

[1] This PGE/CCA aspect of the case has been settled and is not before us on appeal.

complaint and in a separate case which has now been consolidated with the present one, PKS denied liability and alleged that it is entitled to indemnity from CCA for its legal costs in defending Hansmann's action against it. Specifically, PKS alleged in its separate complaint that it was named as a defendant in the personal injury action filed by Hansmann, that it had tendered a defense of the Hansmann claim to CCA, that the claim was settled by PGE's payment of money and that PKS did not contribute to the settlement but did incur defense costs. PKS then alleged that Hansmann's injuries were caused by CCA's negligence in:

"A. Failing to keep a proper lookout for the safety of employees on the project;

"B. Failing to place and maintain a safe cover over the hole through which Mr. Hansmann fell;

"C. Failing to adequately and reasonably inspect the covers on the holes at the project to make certain they were safe;

"D. Failing to give adequate warning of the presence of the hole through which Mr. Hansmann fell."

In answer to the PKS allegations, CCA denied any negligence and affirmatively alleged that the Hansmann accident was caused by the negligence of PKS.

Both PKS and CCA moved for summary judgment. After considering affidavits, depositions, exhibits, and oral argument, the trial court held that PKS was entitled to indemnity as a matter of law and that CCA was not so entitled. It entered summary judgment for PKS in both cases and awarded it indemnity in the amount of $6,715.14.

CCA appeals both judgments, advancing two arguments. It argues, first, that the court erred by granting PKS's motion for summary judgment on its indemnity claim for attorney fees and, second, that the court erred in granting PKS's motion for summary judgment in CCA's indemnity action against it.

## SUMMARY JUDGMENT IN FAVOR OF PKS FOR DEFENSE COSTS

CCA argues that PKS did not prove the essential elements of indemnity. In *Fulton Ins. Co. v. White Motor*

*Corp.,* 261 Or 208, 210, 493 P2d 138 (1972), the Supreme Court stated that an indemnity claimant

"* * * must plead and prove that (1) he was discharged on legal obligation owed to a third party; (2) the defendant was also liable to the third party; and (3) as between the claimant and the defendant, the obligation ought to be discharged by the latter."

CCA argues that indemnity is not available here because of the absence of proof that both CCA and PKS were liable in common to Hansmann. CCA emphasizes the fact that PKS *denies* any secondary liability to Hansmann, rather than pleading and proving that such liability existed, as CCA believes is required in an indemnity action. *See United States Fire Ins. Co. v. Chrysler Motor Corp.,* 264 Or 362, 505 P2d 1137 (1973).

■ In an indemnity action seeking defense costs, the plaintiff is not required to prove that it was actually liable to the third party. In *Kamyr v. Boise Cascade Corp.,* 268 Or 130, 133 n 1, 519 P2d 1031 (1974), the Supreme Court stated:

"There is language in *United States Fire Ins. Co. v. Chrysler Motors Corp., supra,* which, if followed, would result in plaintiff in this case being unable to recover its costs of defense regardless of the allegations in [the third party's] complaint because plaintiff won, instead of lost, the case [the third party] brought against it. The language of this opinion is contrary to that language in *United States Fire.*" (Citations omitted.)

We are satisfied that *Kamyr* overrules any express or implied holding in *United States Fire* that would require an indemnitee to plead and prove its own liability to a third party in order to recover defense costs. It is sufficient that the indemnitee plead and prove that it was sued, reasonably incurred costs in defending and that, as between it and the putative indemnitor, the indemnitor should bear the burden of the defense. We hold that PKS properly pled a cause of action for indemnity.

■ We turn next to the question of whether PKS established CCA's primary liability to Hansmann sufficiently to entitle it to summary judgment. Summary judgment may be granted only

"* * * if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." ORCP 47C; *Seeborg v. General Motors Corp.,* 284 Or 695, 699, 588 P2d 1100 (1978) (quoting former ORS 18.108).

Where negligence is a material issue, summary judgment can only be entered when a party's conduct clearly falls above or below the community standard of responsible conduct. *Uihlein v. Albertsons, Inc.,* 282 Or 631, 580 P2d 1014 (1978); *Hamilton v. State,* 42 Or App 821, 829, 601 P2d 882 (1979).

■ Our reading of the affidavits and exhibits accompanying the motion for summary judgment and of the response to that motion leads us to conclude that an issue of material fact remains, at least as to the primary negligence of CCA. The affidavit of Lloyd Steinke, who was in charge of safety for CCA, stated that, after PKS left the area, he placed a sign clearly labeled "Hole Cover" on a plywood cover that was already in place over the hole into which Hansmann fell. He also stated that he sprayed fluorescent orange paint around the outside of the cover and verified that the board was properly cleated to hold it in place. Thereafter, Steinke claimed, he inspected the area at least once each day.

Lawrence Zufelt, a borrowed PKS employe, who was foreman of the CCA safety crew, stated in an affidavit that PKS placed a plywood cover over the hole before it left the area. He said the cover was outlined with fluorescent paint, nailed to the concrete and cleated to limit the cover's movement to only two or three inches. The cover also had a standard warning sign on it. Zufelt stated that his CCA crew inspected the area at least once each week and often more frequently. The cover over the hole was kicked on every inspection to insure that it remained in place. Zufelt stated that he knew the cover had been inspected within the week immediately preceding Hansmann's fall. He also stated that he arrived on the scene of the fall approximately one hour after it had happened. He said the cover was off the hole but still had a legible warning sign on it, it still was painted with orange fluorescent paint and still had cleats on it. Between the time PKS left the area and the

time Hansmann fell, according to Zufelt, approximately four different subcontractors had been working in that area.

This evidence does not, as a matter of law, establish that CCA had primary responsibility for the premises such as to make it liable to indemnify PKS. There are inferences available which would *permit* the conclusion that CCA was responsible, but one could also conclude, *inter alia,* that *neither* PKS nor CCA was negligent. A material issue of fact exists as to whether CCA exercised reasonable care in inspecting the area and whether a breach of its duty caused Hansmann's injury.[2] Summary judgment in favor of plaintiff PKS for indemnity against CCA was inappropriate.

CCA's second assignment of error is that the court erred in granting third party defendant PKS's motion for summary judgment in CCA's third party action against PKS for indemnity or contribution. CCA's complaint alleged that Hansmann's action was caused by the negligence of PKS employes and that, if CCA were found liable, CCA's liability was merely passive and secondary to that of PKS.

To sustain a summary judgment in favor of defendant PKS, the court necessarily concluded from the affidavits either that CCA was primarily liable or that PKS was not negligent at all. As we have already pointed out, material factual issues remain as to CCA's liabilty. The validity of the court's decision depends, therefore, upon a finding that PKS was not negligent.

■ ■ CCA's contractual responsibility to PGE for safety in the area at the time of the fall does not eliminate all possible negligence on the part of PKS. PKS owed a duty of reasonable care to Hansmann, notwithstanding CCA's contractual duties. PKS might have negligently breached its duty, for instance, by inadequately covering the hole it had made. The evidence of PKS's care in covering the hold consists of two statements made in separate affidavits. Zufelt stated:

---

[2] CCA also argues that PKS was not entitled to summary judgment on a common law negligence claim for defense costs. PKS did not raise such a claim in its motion for summary judgment or in its brief to the trial court. It is, therefore, unnecessary to consider it here.

"Before PKS left, they had placed a 3/4-inch plywood cover over the hole through which Mr. Hannsman fell. This cover was outlined with flourescent paint and had attached to it a standard OSHA warning sign.

"In addition, this cover has nailed to the concrete approximately two to four nails. To the underside of this cover, there were nailed two lengths of 2×4 lumber which protruded down into the hole. These cleats were affixed in such a fashion that, should the cover be loosened and should someone kick the cover, the cleats would strike the sides of the hole limiting the cover's movement from two to three inches."

CCA's employe, Steinke stated:

"When PKS left this portion of the job, a plywood cover was in place over the hole through which Hansmann fell. After PKS departed, *I placed a sign clearly labeled 'Hole Cover' on that board, sprayed florescent orange paint around the outside and verified that it was properly cleated to hold it in place."* (Emphasis supplied.)

These statements show a genuine issue of fact as to whether PKS or CCA outlined the cover with fluorescent paint and placed a warning sign on it. Those disputed facts are highly relevant to the issue of PKS's alleged negligence. The issue of negligence is ordinarily a question of fact to be determined by a jury. *Hamilton v. State, supra,* 42 Or App at 828. The court should withdraw a negligence issue from the jury "only where it can say that the actor's conduct clearly falls either above or below the community's standard of reasonable conduct." 42 Or App at 828-29. We conclude that a genuine issue existed as to PKS's negligence and that the trial court erred by granting it summary judgment on CCA's third party claim.[3]

The trial court's orders granting plaintiff PKS's motions for summary judgment are reversed, and the case is remanded for further proceedings.

[3] CCA suggest that PKS might have been vicariously liable for negligent acts of PKS employes who were loaned to CCA for its safety crew. Because we have already concluded that a genuine issue of fact exists as to PKS's negligence, the success of CCA's claim does not depend upon our evaluation of that argument. We point out, however, that CCA, rather than PKS, was solely responsible for the acts of the "loaned" employes because the affidavits indicate that those employes were under the exclusive control of CCA and were not serving any purpose of PKS at the time of the alleged acts of negligence. *See Penrose v. Mitchell Bros.,* 246 Or 507, 513, 426 P2d 861 (1967); Restatement (Second) of Agency, § 226.