Argued and submitted March 8,
reversed and remanded September 1, 1982

STATE OF OREGON, by and through its
DEPARTMENT OF TRANSPORTATION and the
HIGHWAY DIVISION thereof, on the relation of
LaGRANDE INDUSTRIAL SUPPLY CO.,
*Plaintiff,*
*v.*
SCOTT et al,
*Appellants,*
*and*
COLUMBUS et al,
*Respondents.*

(No. A7711-16420, CA 19390)

650 P2d 158

Richard E. Alexander, Portland, argued the cause and filed the brief for appellants.

D. Michael Mills, Salem, waived appearance for respondents.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

WARDEN, J.

## WARDEN, J.

On January 31, 1977, defendant Scott, doing business as Waconda West Construction (Scott) entered into a contract as prime contractor with the Oregon State Highway Division to perform cleaning and painting and to install safety devices on the Columbia River (Astoria) bridge for $328,978. Defendant United States Fidelity and Guaranty Company, (USF&G) provided the performance bond for Scott on the project. On February 8, 1977, Scott subcontracted with B & E Painting, Inc., for B & E to perform sand blasting and painting work for $212,000.[1] On May 11, 1977, defendants Edward and Bernice Columbus, owners of B & E, executed a personal guarantee of all obligations of B & E to Scott.

During the course of the project, a dispute arose between Scott and B & E, and on August 17, 1977, B & E stopped working on the bridge. LaGrande Industrial Supply Co., the relator, was a supplier to B & E. LaGrande was unpaid and filed this action against B & E, the Columbuses and Scott, and against the USF&G on the bond. LaGrande's claim was settled by a payment by Scott, and LaGrande is not involved in this appeal.

In May, 1978, Scott filed a cross-claim against B & E and the Columbuses, alleging that they had breached their agreement by stopping work on the bridge. In June, B & E filed its answer to the cross-claim and, in February, 1979, filed its supplemental cross-claim against Scott and USF&G, alleging that Scott had breached the agreement by failing to make progress payments, by failing to pay B & E workers directly and by failing to pay for extra work performed. The cross-claims were tried before a jury, which returned a verdict in favor of B & E but awarded no damages. Judgment was entered, and Scott appeals.

■ ■ Scott's first six assignments of error are that the trial court erred in denying his motions for directed verdicts on a variety of issues. When determining the propriety of a motion for a directed verdict, we view the evidence

---

[1] Because the state had a requirement that a prime contractor must perform 50 percent of the work, and B & E had subcontracted to do more than 50 percent of the work, the parties agreed that Scott would pay B & E's payroll directly. The relationship between Scott and B & E, however, was understood to be that of prime contractor and subcontractor, respectively.

in the light most favorable to the party against whom it is sought. *Scott v. Mercer Steel/Edwards Realty,* 263 Or 464, 466-67, 503 P2d 1242 (1972). In order to prevail on a motion for directed verdict, it must be shown that reasonable persons could draw but one inference from the evidence and that the inference supports the conclusion urged by the moving party. *James v. Carnation Co.,* 278 Or 65, 69, 562 P2d 1192 (1977).

 Scott first contends that the evidence is undisputed that B & E breached its contract and that, therefore, he was entitled to a directed verdict on his claim for costs incurred in completing the project after B & E refused to perform further. A party to a contract who complains that the other party has breached the terms of a contract must prove performance of the contract on his own part. *Huszar v. Certified Realty Co.,* 266 Or 614, 620, 512 P2d 982 (1973). In the present case, Scott presented evidence that the subcontract was for $212,000, that he had paid to B & E or to others on its behalf, excluding charges for paint, approximately $157,000 (or 74 percent of the total subcontract price), that payments were to be made on a monthly basis in proportion to the percentage of work completed by B & E and that only 50 percent of the work had been completed. That evidence is undisputed in the record as presented to this court.[2] Scott does not, however, direct us to any evidence in the record to show that he complied with his additional contractual duty to pay B & E workers directly.[3] Nonperformance by Scott of this duty, if so material as to justify a refusal by B & E to perform its part of the contract, would have discharged B & E's duty to perform. *Wasserburger v. Amer. Sci. Chem.,* 267 Or 77, 82, 514 P2d 1097 (1973). Whether a breach is so material as to have such a result is ordinarily a question of fact. In this case the jury could have found that B & E was justified in stopping work on the project and, therefore, was discharged

---

[2] The record is voluminous, including 795 pages of testimony and 138 exhibits. On appeal, B & E presented no responding brief, and we are not obligated to search the record for evidence disputing Scott's claims, nor will we search the record for evidence other than that to which Scott has directed us in his brief. *Tidewater v. Wheeler,* 55 Or App 497, 502, 638 P2d 499 (1981).

[3] The subcontract contained a provision for direct payment of B & E's workers. *See* n 1, *supra.*

from performing its contract with Scott. The motion for directed verdict on Scott's claim for damages for completing B & E's work was properly denied.

Scott next contends that he was entitled to a directed verdict on three claims for indemnification for payment of obligations incurred by B & E. The first claim is for $23,000, which Scott paid to LaGrande in settlement of the lawsuit that precipitated this case. The second is for $6,500, which Scott paid to Andrews & Andrews Equipment Company, and the third is for $1,442 for miscellaneous payments made by Scott to other creditors of B & E.

■ ■ In an action for indemnity, the plaintiff must plead and prove that 1) a third party made a claim against him; 2) he reasonably incurred costs in defending or satisfying the claim; and 3) as between the plaintiff and the defendant, the costs incurred ought to be borne by the latter. *PGE v. Const. Consult. Assoc.*, 57 Or App 116, 643 P2d 1334 (1982). In the present case, counsel for B & E conceded at trial that B & E owed the amounts in question and that the amounts were reasonable and necessary. It is undisputed that Scott paid the debts in the amount claimed, and it is also undisputed that, according to the contract, B & E was to "furnish all labor, material, equipment, scaffolds, etc. * * *." From the foregoing evidence, it is clear that as between Scott and B & E, B & E ought to be liable for the debts, and Scott is therefore entitled to indemnification. Scott's motions for directed verdicts on the three claims for indemnification should have been granted.

Scott next contends that he was entitled to a directed verdict on his claims against Edward and Bernice Columbus on their agreement to personally guarantee the subcontract obligations of B & E. Because the guarantee agreement could only come into play if B & E was obligated to Scott and because the jury found it was not, this issue is not properly before us on this appeal and we need not consider it.[4]

---

[4] In retrial of Scott's claim for breach of contract by B & E the Columbuses will remain parties, because of the possibility that they may be found liable on their guarantee agreement if Scott prevails.

Next, Scott contends that he was entitled to a directed verdict on each of the cross-claims of B & E. The first claim[5] is for $5,300, which B & E contended was the difference between what B & E expended on the project and what it claims it received from Scott. This figure was apparently derived by subtracting $66,000[6] that Scott paid B & E from approximately $71,300 that B & E expended. However, it is undisputed that Scott paid an additional $10,000 to Mr. Columbus for work as superintendent on the project and that the $10,000 was meant to be included as part of the total subcontract price. B & E, therefore, actually received $76,000, or $4,700 more than it expended. The trial court should have granted Scott's motion for a directed verdict on this claim.

■ ■ B & E's second claim is for lost profits. To prevail on a claim for lost profits, both the existence and the amount of lost profits must be proved with reasonable certainty. *Pearson v. Schmitt,* 259 Or 439, 442, 487 P2d 84 (1971). Here, the evidence is undisputed that the contract price was $212,000 and that, at the time B & E stopped work on the bridge, approximately $185,000[7] had been paid to it or to others on its behalf. The evidence is also undisputed that B & E expanded approximately $10,000 to $15,000 in addition and owed approximately $30,000 to unpaid suppliers and subcontractors. When asked by counsel how B & E expected to make a profit on the project, Mr. Columbus replied "[We] still expected to get paid the extras." When asked if he had any estimate of what it would have cost to complete the work on the day he left the project, Mr. Columbus answered "No. Because I never got a chance to complete it." There was no testimony as to how much profit B & E expected to make. The evidence was

---

[5] B & E's cross-claims are all for damages resulting from an alleged breach of the contract by Scott. The amounts and basis for the claims asserted at trial vary considerably from the pleadings, making it difficult to determine precisely which claims are before us on appeal. Because no responding brief was filed, we rely heavily on appellant's brief in this regard.

[6] Although not clarified in the record, we assume $66,000 to be the amount Scott paid B & E *in addition* to payment of the payroll.

[7] This figure includes payments made by Scott on behalf of B & E directly to B & E employes and suppliers, including suppliers of paint, and payments made to B & E.

insufficient to show lost profits with reasonable certainty. Therefore, Scott was entitled to a directed verdict on this issue.

■ B & E's third claim is for the fair rental value of scaffolding that was left on the bridge when B & E quit the project. Scott argues that the claim is insufficient in that there is no evidence of an express or implied agreement to rent the scaffolding and, in any event, that there is no evidence of whether or when the scaffolding was used by Scott. Counsel for B & E, in responding to the motion for a directed verdict on this claim, asserted that

> "we know when [the second subcontractor] came on the project or the project was breached on the 2nd of September. We know the project was completed in 1980 and I think its a matter of taking the weeks at $100 a week and adding it up for the jury."

There is no evidence before this court that shows the precise date the scaffolding was used, or if it was used by Scott or a second subcontractor at all. The evidence is insufficient to support an award for damages. The trial court should have granted Scott's motion for a directed verdict on this claim.[8]

■ ■In his final three assignments of error, Scott contends the trial court erred in refusing to give the following instructions to the jury regarding his claims against B & E:

> "B & E Painting, Inc. was only entitled to be paid a percentage of its contract price which equalled the percentage of the work it had satisfactorily completed as of the time of termination.
>
> "If you find, from the evidence, that B & E Painting, Inc. has been paid according to the value of the work performed, and that B & E thereafter refused to perform without additional or immediate payment, I direct you to find that B & E Painting, Inc. breached the agreement.
>
> "Scott had the right to apply prior excess payments to satisfy any payments that might be due to B & E Painting, Inc. in the future."

---

[8] Because the jury found for B & E on its cross claims and did not find for Scott on any of his claims, B & E was the prevailing party in the trial court. We have found that verdicts should have been directed against B & E on its cross claims and in favor of Scott on some of his claims, making Scott the prevailing party.

Scott argues that these instructions concern the respective rights and duties of the parties with respect to payment under the subcontract and, as such, it was prejudical error to omit them. A party is clearly entitled to have his theory submitted to the jury if there is competent evidence to support it. *Carter v. Mote,* 285 Or 275, 279, 590 P2d 1214 (1979). Here, Scott and Mr. Columbus both testified that it was their understanding that B & E was to be paid a percentage of the subcontract price which equalled the percentage of the work satisfactorily completed. That was an integral part of the subcontract and could have determined the outcome Scott's claim against B & E. It was, therefore, error to refuse to give these instructions to the jury.

Reversed and remanded for entry of judgment in favor of Scott and USF&G and against B & E on B & E's cross-claims and in favor of Scott and against B & E on Scott's claims for indemnity and for new trial on Scott's claims for breach of contract.