Argued and submitted April 3, Court of Appeals reversed, trial court affirmed
September 16, 1986

BAUDER,
*Respondent on Review,*

*v.*

FARMERS INSURANCE COMPANY
OF OREGON,
*Petitioner on Review.*

(TC A8403-01592; CA A34683; SC S32352)

725 P2d 350

William L. Hallmark, Portland, argued the cause for petitioner on review. With him on the petition were William G. Earle, and Hallmark, Griffith & Keating, P.C., Portland.

Ben C. Fetherston, Jr., Salem, argued the cause for respondent on review. With him on the response was Clark, Marsh, Lindauer & McClinton, Salem.

GILLETTE, J.

## GILLETTE, J.

This is another in a series of cases in which this court has been called upon to discern and declare the extent of statutorily mandated personal injury protection (PIP) insurance coverage in an automobile liability policy. The present case involves interaction between PIP coverage and separately mandated uninsured motorist (UM) coverage. The issue presented is: When the damages that an insured is entitled to recover from his insurer because of injuries caused by an uninsured motorist exceed the aggregate of his UM and PIP coverage, should the PIP payments be subtracted from the amount due under the UM coverage? The Court of Appeals answered this question in the negative. *Bauder v. Farmer's Ins. Co.,* 76 Or App 41, 707 P2d 1296 (1985). We reverse.

We take our statement of facts from the Court of Appeals:

"[The insured] was seriously injured in an automobile accident. The driver of the other vehicle was uninsured. [The company] is [the insured's] automobile insurer, and its policy provides personal injury protection (PIP) coverage and uninsured motorist coverage, both with $100,000 limits. After the accident, [the company] paid [the insured] $100,000 from the PIP coverage for medical expenses. [The company] then denied [the insured's] claim for uninsured motorist coverage payments on the ground that, under ORS 743.835, the PIP payments were an offset against and exhausted [the insured's] uninsured motorist coverage. [The insured] brought this action, alleging that general damages of $2,000,000 had been sustained due to the uninsured driver's negligence and that [the insured] was entitled to recover $100,000 from [the company] under the uninsured motorist coverage. The trial court granted summary judgment for [the company], and [the insured] appeals.

"ORS 743.835 provides:

'Payment by a motor vehicle liability insurer of personal injury protection benefits for its own insured shall be applied in reduction of the amount of damage that the insured may be entitled to recover from his insurer under uninsured motorist coverage for the same accident.'

"[The insured] argues that ORS 743.835 allows an insurer's PIP payments to its insured to be subtracted from the

*damages* the insured may recover under his uninsured motorist coverage, but that the statute does not contemplate that the *limits of the uninsured motorist coverage* can be reduced by the insurer's PIP payments. Therefore, [the insured] maintains, in cases such as this, where the amount of damages exceeds the aggregate of the limits of uninsured motorist coverage and the insurer's PIP payments, ORS 743.835 does not prevent the insured from recovering under the former. [The company's] position is the converse of [the insured's]. Notwithstanding [the company's] extensive discussion of legislative history, neither party urges that the statute is ambiguous." 76 Or App at 43-44. (Emphasis in original; footnotes omitted.)

The company, petitioner here, argues that this court's decision in *Monaco v. U.S. Fidelity & Guar.,* 275 Or 183, 550 P2d 422 (1976), is virtually on all fours with this case and requires a decision in its favor. The insured, while not conceding that *Monaco* is controlling, nonetheless urges that two more recent decisions of this court, *Kessler v. Weigandt,* 299 Or 38, 699 P2d 183 (1985), and *Staiger v. Burkhart,* 299 Or 49, 698 P2d 487 (1985), have cast substantial doubt on *Monaco's* continuing efficacy. The Court of Appeals agreed with the insured: "Although the court did not answer the question [raised in this case] in either *Staiger* or *Kessler,* * * * statements [in both opinions] make it clear that the precise question [the insured] raises is now an open one, notwithstanding *Monaco.*" 76 Or App at 41.

Having decided that *Monaco* was no impediment to considering the merits of the insured's claim, the Court of Appeals then held:

"We agree with [the insured's] understanding of ORS 743.835. The statute refers to a 'reduction of the amount of *damage* that the insured may be entitled to recover from his insurer *under* uninsured motorist coverage.' (Emphasis supplied.) The statute does not say that PIP payments can effect a diminution of the uninsured motorist coverage itself. Moreover, if policy arguments were relevant to the inquiry, we would find considerable merit to [the insured's] contention that the only logical objective of ORS 743.835 is to prevent PIP payments from resulting in double recovery, not to eliminate a second specie of coverage for which a premium has been paid and that is necessary to compensate the insured fully." 76 Or App at 44-45.

The company then filed the present petition for review, which we granted to resolve the ambiguity the Court of Appeals found to exist between *Monaco, Kessler* and *Staiger.*

Normally, because a question of statutory construction is involved, we first would focus on the statutory language itself before passing on to secondary sources of construction such as legislative history and case law. Here, however, we need pause only briefly to note that, as far as the *language* of ORS 743.835 is concerned, the Court of Appeals' construction of the statute is eminently reasonable: "Damages" is normally read to refer to the aggregate harm suffered by a party, expressed as an amount of money. If that is what "damage" means in ORS 743.835, the Court of Appeals was correct. For the company to prevail, "damage" must be read to mean, in reality, "damage up to the limit of the UM coverage of the insurance policy."

The company argues that, whatever construction this court might give "damage" in ORS 743.835 if we were writing on a clean slate, this slate is not clean. We turn to a consideration of *Monaco v. U.S. Fidelity & Guar., supra.*

The facts in *Monaco* are virtually identical to the present case. In *Monaco,* the insured's guardian *ad litem* brought an action against defendant insurance company seeking recovery under the UM coverage of defendant's insurance policy. Plaintiff's injuries had caused damages in excess of $20,000. The UM limit was $10,000. Plaintiff had received PIP payments of $8,322.35. Defendant had paid her $1,677.65 — the difference between the PIP payments and its UM policy limit — and refused to pay more. A trial court gave judgment for defendant, holding that the PIP payments could be offset against the UM limit. Plaintiff appealed to this court.

Because of its importance, we set out this court's decision in *Monaco* at some length:

> "The only question presented by this appeal is whether ORS 743.835 allows an insurer to subtract personal injury protection benefits paid to its insured from the amount due under the uninsured motorist coverage whether or not the insured is fully compensated for his or her loss.

> "Defendant's policy was issued to the plaintiff's mother pursuant to the statutory requirements of ORS 743.786-743.835, which mandate the extension of uninsured

motorist coverage and personal injury protection benefits to any person insured under the type of motor vehicle liability policy issued in the case at bar. ORS 743.789; ORS 743.800.

"This is the first time this court has been asked to interpret ORS 743.835. The statute was first enacted by Oregon Laws 1971, Chapter 523, Section 9, and remained unamended during the period when this action was brought. At that time ORS 743.835 provided:

'Payment of any benefit required by ORS 743.800 to or for any insured and any payment required by ORS 743.825 to any health insurer or health care service contractor shall be applied in reduction of the amount of damage that the insured may be entitled to recover from any insurer under bodily liability or uninsured motorist coverage for the same accident.'[1]

"The policy issued in the present case includes a clause in language similar to the statute.[2]

"The plaintiff's basic argument is that the insurer should not be allowed to reduce its liability under the uninsured motorist coverage until the insured-claimant has been fully indemnified for his or her loss. In other words, ORS 743.835 should be interpreted only to prohibit double recoveries, not to limit recovery in a case such as this one where the stipulated damages are in excess of the uninsured motorist coverage.

---

"[1]

ORS 743.835 has been amended, effective January 1, 1976, by Oregon Laws 1975, Chapter 784, section 10, to read as follows:

'Payment by a motor vehicle liability insurer of personal injury protection benefits for its own insured shall be applied in reduction of the amount of damage that the insured may be entitled to recover from his insurer under uninsured motorist coverage for the same accident.'

"If there was any doubt about the legislative intent in ORS 743.835 prior to the 1975 amendment, that doubt has been removed by the very specific language of the 1975 version.

"[2]

'Any payments made by the Company under this insurance either as benefits to or on behalf of any *injured person* or as reimbursement, pursuant to Chapter 523 of Oregon Laws 1971 [ORS 743.800 to 743.835], to any other insurer or organization for such benefits paid by it shall be applied in reduction of the amount of damages which, because of *bodily injury* sustained in the same accident, such *injured person* may be entitled to recover from the Company or any other insurer under insurance afforded for either bodily injury liability or protection against uninsured motorists.'

"It is true that in the past, absent a showing of double recovery, this court has refused to uphold insurance contract provisions attempting to set off recovery under the uninsured motorist coverage on public policy grounds. *Amer. Motorists Ins. v. Thompson,* 253 Or 76, 79, 453 P2d 164 (1969); *Peterson v. State Farm Ins. Co.,* 238 Or 106, 111-115, 393 P2d 651 (1964).

"Following such decisions, the legislature has amended the statutes to allow the insurer to set off amounts due the insured under the uninsured motorist coverage, or other policy provisions, by amounts received by the insured from other sources. ORS 743.792(7) et seq; ORS 743.792(11) et seq; ORS 743.828; ORS 743.830. Comparing the language of ORS 743.835 with the above cited statutes, it appears that ORS 743.835 clearly allows a reduction from the amount payable under the uninsured motorist coverage by benefits received by the insured from the personal injury protection endorsement.

"Although all statutes can perhaps be more artfully drawn, there is no ambiguity in the language of ORS 743.835. It clearly does not limit reduction from the amount payable to situations where the total damages of the insured are less than the uninsured motorist policy coverage amount.

"The plaintiff contends that interpreting ORS 743.835 in this manner frustrates the legislative intent in providing the personal injury protection benefits. Plaintiff cites legislative history which indicates that the two main reasons for mandating PIP was to provide quick payment of claims and to ensure that all insured drivers, their families and guests and pedestrians injured by them, would recover medical and economic losses subject to limits purchased without regard to fault.[3] Plaintiff argues that the second purpose is defeated by defendant's interpretation of ORS 743.835. This same argument, of course, could well be made against any of the other statutory provisions allowing setoffs. A more persuasive indication of legislative intent in enacting ORS 743.835 itself, however, is found in the May 19, 1971 written presentation of the Special Advisory Committee on Auto Insurance to the Senate Committee on the Judiciary. Therein it was stated that the purpose of section 9 of House Bill 1300, which became ORS 743.835, was 'that money paid by an insurer under this coverage [personal injury protection] is not in addition to the policy limits in "limits" cases.'

"Whatever the legislative history of an act may indicate, it is for the legislature to translate its intent into operational language. This court cannot correct clear and unambiguous

language for the legislature so as to better serve what the court feels was, or should have been, the legislature's intent. *Lane County v. Heintz Construction Co. et al,* 228 Or 152, 157, 364 P2d 627 (1961).

"\* \* \* \* \*

"In the absence of ORS 743.835, [cases from other jurisdictions] might be persuasive. However, our legislature has adopted a statute which clearly and specifically allows an insurer to set off personal injury protection benefits paid against the liability under the uninsured motorist coverage, whether or not the claimant is fully indemnified." 275 Or at 185-89.

---

"3

February 24, 1971 Statement regarding proposals of Insurance Commissioner's Special Advisory Committee on Auto Insurance by the Insurance Commissioner."

The foregoing speaks for itself: In a case decided soon after the enactment of ORS 743.835 and on facts remarkably similar to those of the present case, this court, making use of such legislative history and other aids as were available, authoritatively construed the statute as authorizing an insurance carrier to offset PIP payments against UM policy limits, even if to do so meant a claimant would not be fully compensated. The company is correct. The slate is not clean, unless *Kessler* or *Staiger* erased it.

*Kessler* arose under a different part of the statutory PIP scheme, *viz.,* that portion dealing with interinsurer reimbursement for PIP advance payments. UM coverage was not involved. Kessler was injured in an accident in which Weigandt was at fault. Weigandt's motor vehicle liability policy had a $100,000 maximum limit for injuries suffered by any one party. Kessler's damages exceeded $400,000. Kessler's own carrier paid Kessler nearly $12,000 in PIP benefits. Under ORS 743.825, a PIP interinsurer reimbursement statute, Weigandt's insurer was liable to reimburse Kessler's insurer for the $12,000 in PIP payments.

The issue in the case arose over whether Weigandt's insurer — which recognized it was liable to Kessler up to its policy limits — was entitled to offset the $12,000 it owed Kessler's insured. This court held that an offset was not allowable, because the statutory reimbursement obligation

ran between carriers and was not affected by the policy limit, which spoke only to Weigandt's carrier's obligation to Kessler. The obligations having different sources, one could not be offset against the other. 299 Or at 43.

This court's holding in *Kessler* had nothing to do with ORS 743.835. However, an argument by Weigandt's insurer required a discussion of that statute:

"[Weigandt's insurer] argues that legislative history directs a different result. [Weigandt's insurer] contends that the PIP scheme was originally enacted in 1971 to ensure prompt payment by his own insurer of part of an injured person's medical expenses and wage loss, but there was to be no 'double recovery.' By that [Weigandt's insurer] means that the legislative history shows that the injured person was not to recover both PIP benefits plus the legally responsible person's liability 'policy limits' in any situation. There is legislative history to support the view that the legislature may have so intended that result. That is borne out by the text of a statement by the Insurance Commissioner before the Senate Judiciary Committee on May 19, 1971:

'Section 9 [later codified as ORS 743.835] provides that the money paid by an insurer under this coverage is not in addition to the policy limits in a limits case, but is subtracted from the policy. The same would be true if you had an uninsured motorist claim.'

"* * * * *

"* * * [Weigandt's insurer] assumes in its argument that the text of the Insurance Commissioner's statement and the statutory text are synonymous. That is not necessarily so. The statement speaks to subtraction of the amount of PIP benefits from the 'policy limits.' The statute speaks to an entirely different minuend, i.e., 'the amount of damage' [sic] which an injured person may be entitled to recover from an insurer. The text of the statute is not in accord with the Commissioner's explanation if the *damages* that a PIP benefits payee is entitled to recover are in *excess* of the policy limits." *Kessler v. Weigandt, supra*, 299 Or at 44-5. (Emphasis in original.)

While not required to do so, this court had highlighted the fact that ORS 743.835 focused, by its terms, on "damage," not limits.

If the *Kessler* observation was, strictly speaking, a *dictum,* it was an understandable one in view of the fact that

this court decided *Staiger v. Burkhart* on the same day, the two cases had interlocking subject matter — offsetting PIP benefits against other kinds of payments — and *Staiger* did directly involve ORS 743.835.

In *Staiger,* plaintiffs were passengers in a car driven by defendant Burkhart when it was involved in a collision. Plaintiff's two minor children sued Burkhart, *inter alia,* for damages.

Defendant Oregon Mutual Insurance Company (OMIC) was Burkhart's motor vehicle liability insurer. The policy it issued to Burkhart had a single $50,000 bodily injury limit. OMIC paid each plaintiff $5,000 ($10,000 in total) in PIP benefits. Plaintiffs settled their actions for damages, with OMIC contributing $40,000 to the total settlement figure. The parties specifically reserved the question of whether OMIC could offset the $10,000 in PIP benefits against its $50,000 policy limits. If it could do so, the $40,000 contribution exhausted its liability. If not, it owed plaintiffs an additional $10,000.

This court held OMIC owed the additional amount. We explained:

"* * * OMIC contends that it is entitled under a proper interpretation of ORS 743.835 to the offset. [Footnote omitted.] * * *

"* * * * *

"OMIC draws our attention to the original language of ORS 743.835 as enacted in 1971. That text clearly stated that payment of PIP benefits was to be applied in reduction of 'the amount of damage [sic] that the insured may be entitled to recover from *any insurer* under bodily liability or uninsured motorist coverage for the same accident.' (Emphasis added.) OMIC relies on this court's decision in *Monaco v. U.S. Fidelity & Guar.,* 275 Or 183, 550 P2d 422 (1976).

"In that case plaintiff sought to recover damages for bodily injuries under the $10,000 uninsured motorist coverage provided by the defendant. Plaintiff's damages were stipulated to be $20,000. Under the same policy defendant was responsible for the payment of plaintiff's PIP benefits and paid $8,322.35 under that coverage. Plaintiff contended that because there would be no double recovery (in light of the stipulation as to the amount of her actual damages) the defendant should pay

her the full $10,000 under the uninsured motorist coverage. Defendant contended that it was entitled to the offset under ORS 743.835. We pointed out that in earlier cases we had held insurance contract provisions 'attempting to set off recovery under the uninsured motorist coverage' to be invalid on public policy grounds. We agreed with the insurer that the legislative history of the 1971 statute indicated that the legislature intended that the PIP benefits not be in addition to the amount recoverable up to policy limits in 'limits' cases. We found even more important to be the text of the statute. We said:

> 'Whatever the legislative history of an act may indicate, it is for the legislature to translate its intent into operational language. This court cannot correct clear and unambiguous language for the legislature so as to better serve what the court feels was, or should have been, the legislature's intent. *Lane County v. Heintz Construction Co. et al,* 228 Or 152, 157, 364 P2d 627 (1961).'

275 Or at 188. We concluded that the text of the statute 'clearly and specifically' entitled the offset sought by the defendant.[6]

"* * * * *

"We do not believe that [*Monaco* is] * * * of any help to OMIC. To the contrary, the quotation concerning statutory construction from *Monaco* set forth, *supra,* is quite detrimental to OMIC's position. The 1975 amendment to ORS 743.835 purposely eliminated the reference to 'any' insurer, and the statute now encompasses only the right of offset of the writer of uninsured motorist coverage." 299 Or at 52-53.

---

"6

There is no hint in the opinion in *Monaco v. U.S. Fidelity & Guar.,* 275 Or 183, 550 P2d 422 (1976), that the plaintiff specifically argued that the offset was to be applied to her damages rather than the policy limits. The opinion does not disclose that this court may have realized there was a real question. *See Kessler v. Weigandt,* 299 Or 38, 699 P2d 183 (1985)."

*Kessler* and *Staiger* are obviously distinguishable from *Monaco,* which remains the only opinion of this court specifically dealing with offsetting PIP payments against UM payments. *Monaco* holds that the statute authorizes such a setoff. *See also Edwards v. Bonneville Auto Ins. Co.,* 299 Or 119, 699 P2d 670 (1985) (original legislative policy to allow setoff not intended to be changed by 1975 amendments).

The Court of Appeals, however, relied on our *dictum* in *Kessler* and, particularly, our footnote 6 in *Staiger* to infer that, were we facing the issue anew, we might decide *Monaco* differently. That inference is not unreasonable. However, we conclude that *Monaco* was right when it was decided and we are not going to overrule it now.

Two factors bear on our decision. The first is that *Monaco's* clear answer to the question presented here has always been subject to legislative change. It has survived five regular legislative sessions after our interpretation was announced. We see no reason to do what the legislature, for whatever reason, has not seen fit to do.

Secondly, we wish to note that, to a degree, our implied criticism of *Monaco* in *Staiger v. Burkhart, supra,* 299 Or at 53 n 6, in which we said that there was no hint in *Monaco* that this court had considered the significance of the legislature's use of the term "damage," rather than "policy limits," was not justified. This very question was extensively briefed and argued by the parties, although the *Monaco* opinion makes no mention of it. *Monaco's* construction of ORS 743.835 remains the law. The Court of Appeals' contrary conclusion was error. It is reversed.

The judgment of the Court of Appeals is reversed. The judgment of the trial court is affirmed.