Argued and submitted May 24, 1996, affirmed December 24, 1997

PORTLAND GENERAL ELECTRIC COMPANY,
an Oregon corporation,
*Respondent,*

*v.*

JUNGWIRTH LOGGING, INC.,
an Oregon corporation,
*Appellant.*

(CCV 9406043; CA A89234)

951 P2d 1101

Robert D. Greaves argued the cause for appellant. With him on the briefs were Bruce H. Orr and Meyer & Wyse.

Lee S. Aronson argued the cause for respondent. On the brief were Lee Aronson and Schulte, Anderson, Downes, Carter & Aronson, P.C.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

ARMSTRONG, J.

Warren, P. J., dissenting.

**ARMSTRONG, J.**

Defendant Jungwirth Logging, Inc. (JLI) appeals a summary judgment in favor of plaintiff Portland General Electric Company (PGE). We affirm.

The following facts are undisputed. JLI employed Mike Hartsell to work on a logging crew. In February 1994, Hartsell was electrocuted when a crew member threw a wire rope over a high voltage PGE power line, causing it to ground on equipment that Hartsell was touching. JLI had not notified PGE of its logging activity and had not guarded effectively against accidents involving the high voltage power line, even though it was required to do both under ORS 757.805(1).[1] Hartsell's estate filed an action against PGE, alleging negligence and other claims. PGE denied any liability for Hartsell's death and moved for summary judgment, arguing that there was no factual dispute as to liability.[2] The court denied PGE's motion. PGE continued to deny liability, but settled with Hartsell's estate for the amount of $60,000. In addition to the $60,000 payment, PGE incurred $17,994 in attorney fees and costs defending against the action.

PGE then brought the present action against JLI pursuant to ORS 757.805(2), which provides:

"(2) If any violation of subsection (1) of this section or rules adopted pursuant to ORS chapter 654 results in, or is a contributing cause of, a physical or electrical accident involving any high voltage overhead line, the person or business entity violating subsection (1) of this section or rules adopted pursuant to ORS chapter 654 is liable to the utility operating the high voltage overhead lines for all damages to its facilities and all costs and expenses, including damages to any third persons, *incurred by the utility as the result of the accident.* However, any person or business

---

[1] ORS 757.805(1) provides:

"Any person or business entity responsible for performing any function, activity, work or operation in proximity to a high voltage overhead line shall guard effectively against accidents involving such high voltage overhead line, as required by rules adopted pursuant to ORS chapter 654."

[2] PGE also filed a third-party claim against JLI in the original action. JLI stipulated to a dismissal of that claim without prejudice to PGE's rights to bring an action under ORS 757.805.

entity that has given advance notice of the function, activity or work to the utility operating the high voltage overhead line, and has otherwise substantially complied with rules adopted pursuant to ORS chapter 654, shall only be liable for such damages in proportion to that person or business entity's comparative fault in causing or contributing to the accident."

(Emphasis supplied.) PGE alleged, *inter alia*, that JLI had not complied with the pertinent safety regulations and that, as a result of that noncompliance, PGE had been forced to defend against and resolve the action by Hartsell's estate. PGE then moved for summary judgment, claiming that there were no material facts in dispute. JLI filed a cross-motion for summary judgment on its affirmative defense that PGE had failed to state a claim. JLI argued that, in order to state a claim under ORS 757.805(2), PGE had to plead and prove that it had been liable to Hartsell's estate in the underlying action. The trial court granted PGE's motion for summary judgment and denied JLI's cross-motion. The trial court then awarded $77,994 to PGE—the sum of the settlement and PGE's attorney fees and costs.

JLI likens the remedy under ORS 757.805(2) to common-law indemnity and argues that a party seeking indemnity must show that it has discharged an actual liability of its own. Accordingly, JLI contends that PGE cannot seek indemnification under ORS 757.805(2) unless PGE pleads and proves its own liability to Hartsell's estate. PGE argues in response that our decision is controlled by the language of ORS 757.805(2) and that there is nothing in the statute to indicate that PGE must prove that it was liable to Hartsell's estate before it may recover anything from JLI. We agree with PGE.[3]

In construing a statute, our purpose is to effectuate the intent of the legislature. In order to do that, we look first to the text of the statute, in context. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). ORS

---

[3] Because we agree with PGE that the plain language of the statute controls our decision, we need not address JLI's contention that the common law requires an indemnitee to plead and prove actual liability. For the same reason, we disagree with the dissent's application of the common law of indemnity to this case.

757.805(2) sets forth the elements of a statutory claim for reimbursement:

> "If any violation of subsection (1) of this section or rules adopted pursuant to ORS chapter 654 results in, or is a contributing cause of, a physical or electrical accident involving any high voltage overhead line, the person or business entity violating subsection (1) of this section or rules adopted pursuant to ORS chapter 654 is liable to the utility * * * for all * * * costs and expenses, including damages to any third persons, incurred by the utility as a result of the accident."

The language of the statute unambiguously requires only that the plaintiff plead and prove (1) that the defendant violated ORS 757.805(1) or rules adopted pursuant to ORS chapter 654; (2) that the violation resulted in, or was a contributing cause of, a physical or electrical accident; and (3) that, *as a result of that accident*, the utility incurred costs and expenses, which may include damages to third persons. PGE properly pleaded those elements in its claim against JLI.

JLI argues, nevertheless, that the word "incurred" in the statute embodies a requirement that a utility must be liable to the third party on a claim of this kind, because the utility would "incur" costs and expenses only if it were liable to the third party. We disagree. The commonplace meaning of incur is "to become liable *or* subject to." *Webster's Third New International Dictionary* 1146 (unabridged ed 1993) (emphasis supplied). *See PGE*, 317 Or at 611 (words of common usage typically should be given their plain, natural and ordinary meaning). Thus, in order to prevail, PGE need only plead and prove that, as a result of JLI's safety violations, PGE was *subjected* to certain costs and expenses that it now seeks to have reimbursed. Here, there is no dispute that, but for JLI's actions, PGE would not have been sued by Hartsell's estate and would not have been subject to resolving that action through settlement or litigation.[4] Indeed, ORS

---

[4] Here, no one has argued that there was a factual issue about whether the Hartsell action against PGE resulted from JLI's safety violations. Also, no one has raised a factual issue about whether the costs and expenses sought by PGE, including the amount that it paid to settle the Hartsell action, were reasonably incurred by it in responding to the action.

757.805(2) specifically contemplates a situation in which the utility has no liability by authorizing reimbursement of costs and expenses incurred as a result of "any violation [that] *results in, or* is a contributing cause of, a physical or electrical accident." (Emphasis supplied.) If the utility could seek reimbursement only when it was partially or fully responsible, there would be no need for the statute to refer to accidents that were caused solely by the defendant's violation of the safety rules.

In order to support its contention that PGE must plead and prove liability, the dissent cites to definitions of "subject to" that imply liability. 151 Or App at 797. One definition of "subject to" that the dissent omits, however, is "governed or *affected by*." *Black's Law Dictionary* 1425 (6th ed 1990) (emphasis supplied). There is no question that PGE was affected by the cost and expense of settling the underlying claim, whether or not it was actually liable. Moreover, to define "subject to" as "liable for" makes redundant the definition of "incur," which is "to become liable or subject to," that this court has accepted in the past. *See King v. AFSD*, 142 Or App 444, 448, 921 P2d 1326 (1996).

As for the dissent's discussion of the Texas statute that a Texas court interpreted to require a party seeking reimbursement to plead and prove actual or potential liability, it simply does not apply to this case and this statute. The Texas statute is *not* analogous in one important respect. The Texas statute refers not to "costs and expenses" incurred by the party seeking reimbursement but, rather, to *"liability* incurred." (Emphasis supplied.) Had the Oregon legislature used the latter language in ORS 757.805(2), the outcome of this case could well have been different. The legislature chose to allow for reimbursement of *costs and expenses incurred*, however, and there is nothing in that choice to indicate that those costs and expenses must have been linked to a finding of actual or potential liability.

■     JLI also contends that the trial court erred in including attorney fees in its award to PGE. Specifically, JLI invokes the well-established Oregon principle that, unless specifically provided by statute or contract, courts are not free to include attorney fees in litigation costs awarded to a

prevailing party. *Riedel v. First National Bank*, 287 Or 285, 290-91, 598 P2d 302 (1979). Were the awarded fees those incurred by PGE in the present action against JLI, that principle would control. ORS 757.805(2) does not authorize a utility to recover attorney fees in an action brought to recover its costs and expenses incurred as a result of a violation of ORS 757.805(1). The fees awarded in this case, however, were not the fees incurred in bringing this action but, rather, the fees incurred as part of the expense of defending against the underlying action. For that reason, they are merely a component of PGE's damages and, as such, are not barred by the rule in *Riedel. See, e.g., Astoria v. Astoria & Columbia River R. Co.*, 67 Or 538, 550, 136 P 645 (1913).

Affirmed.

**WARREN, P. J.**, dissenting.

The majority errs in affirming the summary judgment for PGE. PGE neither pleaded nor attempted to prove that it had any actual or potential liability to decedent's estate. It therefore failed to establish that it had any reasonable basis to pay. Accordingly, it paid as a volunteer, and the trial court's legal conclusion to the contrary is unsupported by any evidence. Defendant was entitled to prevail on summary judgment as a matter of law.

The majority's premise is that under ORS 757.805(2), PGE is relieved of any obligation to prove its own potential liability as a condition to its right to indemnity. The premise is not supported by a fair reading of the text of the statute and is inconsistent with the context in which the statute was enacted. It is also demonstrably inconsistent with legislative intent and would be an anomaly in a system of law that historically has required parties seeking indemnity to prove that payment was made under threat of liability. When a statute is susceptible of more than one reasonable meaning an analysis of its meaning under the *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993), format is appropriate.

When legislation is enacted which affects an existing body of substantive law, it is presumed that that substantive law forms part of the context in which the legislature has

operated. *Owens v. Maass*, 323 Or 430, 438, 918 P2d 808 (1996). It follows that when common-law remedies are codified and made statutory remedies, the legislature may be presumed to have intended common-law understanding about the remedy to continue in the absence of express language to the contrary. The common-law background is, in effect, part of the context in which the text of the statute must be reviewed. 323 Or at 439-40.

A brief review of the common law of indemnity provides a useful background for an examination of ORS 757.805(2). The common-law right of indemnity was described by the Supreme Court in *Savelich Logging v. Preston Mill Co.*, 265 Or 456, 460, 509 P2d 1179 (1973), as containing the following elements:

> " '[T]he claimant must plead and prove that (1) he has discharged a legal obligation owed to a third party; (2) the defendant was also liable to the third party; and (3) as between the claimant and the defendant, the obligation ought to be discharged by the latter.' " (Quoting *Fulton Ins. v. White Motor Corp.*, 261 Or 206, 210, 493 P2d 138 (1972).)

These elements were also explained in *State Dept. of Trans. v. Scott*, 59 Or App 25, 29, 650 P2d 158 (1982). In *Scott*, we stated that the party seeking indemnity for a case it settled with a third party must plead and prove that:

> "1)   a third party made a claim against him; 2) he reasonably incurred costs in defending or satisfying the claim; and 3) as between the plaintiff and the defendant, the costs incurred ought to be borne by the latter." (Citing *PGE v. Const. Consult. Assoc.*, 57 Or App 116, 643 P2d 1334 (1982).)

*See also Martin v. Cahill*, 90 Or App 332, 336, 752 P2d 857 (1988). Accordingly, the basic tenets of common-law indemnity actions are that the party seeking indemnity must demonstrate that it incurred costs because it was exposed to some risk of liability, that the costs it incurred were reasonable, and that the other party should pay. *Scott*, 59 Or App at 29. Here, PGE asserts on appeal that it was free from any liability. Because nothing in the text or the context of ORS

757.805(2) indicates to the contrary, the precepts of common-law indemnity are applicable to the statutory indemnity in this case and PGE's claim fails.

ORS 757.805(2) provides, in part:

"[T]he person or business entity violating subsection (1) of this section or rules adopted pursuant to ORS chapter 654 is liable to the utility operating the high voltage overhead lines for all damages to its facilities and all costs and expenses, including damages to any third persons, incurred by the utility as a result of the accident. However, any person or business entity that has given advance notice of the function, activity or work to the utility operating the high voltage overhead line, and has otherwise substantially complied with rules adopted pursuant to ORS chapter 654, shall only be liable for such damages in proportion to that person or business entity's comparative fault in causing or contributing to the accident."

The legislature's choice of certain words and phrases, such as "incurred" and "damages to third parties" manifests particular meaning in the context of an indemnity statute, and in an analysis of the statutory text, we give words of common usage their ordinary and plain meaning. *PGE*, 317 Or at 611 (stating that we are to discern the intent of the legislature by beginning with its text and context). We also resort to well-established legal meanings for those terms. *McIntire v. Forbes*, 322 Or 426, 431, 909 P2d 846 (1996). As the majority states, "incur" generally means "to become liable or subject to," 151 Or App at 793, "or it may mean 'to cause, bring on, or occasion.' " *Sager v. McClenden*, 296 Or 33, 37, 672 P2d 697 (1983) (citing *American Indemnity Co. v. Olesijuk*, 353 SW2d 71 (Tex Civ App (1962)). "Subject to" typically means "liable, subordinate, subservient, inferior, obedient to; * * * answerable for." *Black's Law Dictionary*, 1425 (6th ed 1990).[1] "Damages" commonly refers to "the aggregate harm suffered by a party, expressed as an amount of money." *Bauder v. Farmers Ins. Co.*, 301 Or 715, 719, 725 P2d 350 (1986). *See also Sager*, 296 Or at 37 (stating

---

[1] "Subject" has also been defined as being "under authority" or "being under control or dominion." *Webster's Third New International Dictionary*, 2275 (unabridged ed 1993).

that "when used in the plural, 'damages' means 'a compensation in money for a loss'" (citing *Black's Law Dictionary*, 351 (5th ed 1979)).

One who pays as a volunteer has been subjected to, or liable for, no loss and can hardly claim to have been damaged. Contrary to the majority's conclusion, use of the terms "for all damages to its facilities and all costs and expenses, including damages to any third persons, incurred by the utility as a result of the accident" in the first sentence of ORS 757.805(2) demonstrates the legislature's intent to require the utility to plead or prove, as a condition of the right to indemnity, actual or potential legal liability. No damages, costs or expenses are incurred unless the party seeking reimbursement has paid them under an obligation to do so.

No Oregon case has interpreted ORS 757.805(2). However, in *Houston Lighting, Etc. v. Eller Outdoor Adv.*, 635 SW2d 133 (1st Dist Tex App 1982), an analogous statute was interpreted. In that case, an employee of Eller Outdoor Advertising (Eller) was electrocuted when he came into contact with an overhead power line owned and operated by Houston Lighting & Power Company (HL&P), violating several sections of the Public Utilities Act. Tex Rev Civ Stat Ann art. 1436c § 7 (1980). The employee's estate filed an action against the utility, and the utility settled. The utility then brought an action against Eller to recover the amount of the settlement, costs, and attorney fees. *Id.* at 133-34. HL&P claimed that, because of Eller's violations, it was entitled to indemnification under § 7(b) of the Act. The statute provided:

> " 'If a violation of this Act results in physical or electrical contact with any high voltage overhead line, the person, firm, corporation, or association violating the provisions of this Act shall be liable to the owner or operator of such high voltage line for all damage to such facilities and for all liability incurred by such owner or operator as a result of any such contact.' " *Id.* at 134 (quoting Tex Rev Civ Stat Ann art. 1436c § 7(b) (1980)).

Eller did not dispute that the violation occurred but argued that relevant workers' compensation laws barred indemnification. The court agreed with HL&P that the utility could

bring an indemnification action but concluded that its right to indemnification was not absolute:

"Because the case has not been fully developed on the summary judgment proceedings, the court cannot determine whether the employee had any cause of action against HL&P, giving the latter a right of indemnification under the Public Utilities Act, or whether HL&P's settlement of the employee's claim was reasonable. HL&P must establish both to prove its right to indemnification by the employer." *Id.* at 135 (citation omitted).

Although the Texas statute refers to "liability incurred" by the utility, as stated earlier, "damages incurred" similarly involves the connotation of responsibility to pay imposed by law, not amounts paid voluntarily.

Here, as in *Houston Lighting*, there was no evidence on the summary judgment record that decedent had any viable claim against PGE justifying PGE's payment. Without pleading and proof that it paid to avoid a reasonable threat of liability, PGE incurred no damages and is not entitled to indemnity. From all that appears on the summary judgment record, PGE had no actual or potential liability to decedent's estate. A party required to defend due to its improvident joinder by an injured party is not entitled to indemnity from a negligent party. *Kamyr, Inc. v. Boise Cascade Corp.*, 268 Or 130, 137, 519 P2d 1031 (1974).[2] The trial court erred in granting summary judgment for PGE. Defendant was entitled to judgment as a matter of law.

I dissent.

---

[2] I agree with the majority's position of the second question. *See St. Paul Fire & Marine v. Crosetti Bros.*, 256 Or 576, 475 P2d 69 (1970).