Argued February 29, decided March 19, rehearing denied May 14, 1912.

## TUOHY v. COLUMBIA STEEL CO.

[122 Pac. 36.]

TRIAL—MISCONDUCT OF COUNSEL—ATTEMPT TO GET INADMISSIBLE MATTER BEFORE JURY—INSURANCE.

1. A willful attempt by plaintiff in a personal injury case to show that defendant is protected by insurance is reversible error.

TRIAL—EVIDENCE—REVIEW—PREJUDICE.

2. In an action for injuries to a servant, an attorney employed by the firm conducting the defense testified in defendant's behalf, and on cross-examination was asked if he was not active in assisting in procuring the facts in cases in which his firm was interested. He testified that that was part of his duty, but that about three-fourths of his time was taken up with other classes of work, when he was asked whether it was not in cases in which the clients were protected by insurance, to which question an objection was sustained. *Held,* that the question asked in the manner it was, and under the existing circumstances, was not calculated to excite prejudice against defendant, and was therefore not reversible error.

EVIDENCE—INJURIES TO SERVANT—EVIDENCE.

3. Plaintiff, a servant, claimed that his eye was destroyed by a piece of tool steel flying into it, while the theory of the defense was that the metal was from a manganese casting, and not from the tool, and that such a substance could not be attracted by a magnet. The piece of steel presented by plaintiff and which his testimony tended to show was the identical one extracted from his eye was readily attracted by a common magnet, while a physician testified that he applied the steel in plaintiff's eye to a large electric magnet, and it was not attracted thereby. There was other evidence that pieces of manganese steel were attracted by a common magnet. *Held,* that a question as to the effect on an electric

magnet of the disconnection of the current, which the witness answered by saying that the magnet would not attract if the current was disconnected, was not error.

DAMAGES— INJURIES TO SERVANT— ELEMENTS OF DAMAGE— MEDICAL SERVICES—REASONABLENESS.

4. An injured servant may not recover expenses for medicines and medical treatment in the absence of proof that the charges were reasonable.

APPEAL AND ERROR—REVIEW—AMOUNT OF DAMAGES—REVERSAL.

5. A judgment for damages for personal injuries would not be reversed for an erroneous submission of expenses for medicines and medical treatment, where the amounts claimed therefor were definite, and could easily be separated from the rest of the recovery.

DAMAGES—EXCESSIVENESS—PERSONAL INJURIES.

6. Plaintiff, a foreman, in a molding department of defendant's machine shop, earning $175 per month, was injured by a piece of tool steel striking him in the eye. He lost that eye, and suffered a sympathetic impairment of sight in the other. He also lost two months' time, suffered intense pain, but was subsequently employed by another corporation at the same labor and for the same salary. *Held*, that a verdict for $11,300, sustained by the trial court, would not be set aside on appeal as excessive, except to the extent of $950 allowed for medicines and medical services which he was not entitled to recover under the evidence; the question of excessive damages being solely for the trial court, and its refusal to set aside the verdict on that ground not to be reviewed.

From Multnomah: WILLIAM N. GATENS, Judge.

Statement by MR. JUSTICE MCBRIDE.

This is an action by John Tuohy against the Columbia Steel Company to recover for personal injuries resulting from the loss of an eye, sustained by plaintiff while working as a foreman in the molding department of defendant's machine shop.

Plaintiff's evidence tends to show that at the time of the accident he was engaged in making a thermite weld, the processes of making it being unnecessary to describe, upon a defective casting. In the prosecution of this work, it was necessary to have a piece cut off of a tenpenny iron spike, and plaintiff asked an operator in an adjoining department to cut the spike with a pneumatic chisel. The spike was laid upon a casting, plaintiff holding one end

of it to keep it in place, and, when the necessary power was applied, the chisel, by reason of its defective quality —it being too hard or to brittle—broke or splintered near the point, and a piece of the steel became imbedded in plaintiff's eye in such a position that it was impossible to discover or extract it, and, after suffering great pain and inconvenience for about a year, plaintiff was compelled to have the eyeball removed. The evidence also tends to show that the chisels were manufactured in defendant's blacksmith shop, which was connected with the works, and that previous to the accident repeated complaints by employes had been made to defendant's superintendent that they were too hard and of poor quality, but that no action was taken to require them to be properly constructed or tempered. The testimony on behalf of defendant tends to show that the injury did not occur while a spike was being cut at the request of plaintiff, but, on the contrary, that plaintiff had requested the person operating the chisel to chip off a piece of manganese steel from a casting of that substance as a test of its hardness, and that the manganese steel, being harder and more brittle than ordinary steel, splintered and a piece struck him in the eye, causing the injury. It is also contended that he was guilty of contributory negligence in standing too near the chisel, when the power was applied, without protecting his eyes by goggles. At the time of his injury plaintiff was earning $175 per month, and he lost over two months' time. Afterwards he was employed by another corporation at the same labor for the same salary. The evidence tends to show that the remaining eye is sympathetically affected, and is not so strong as it was before the injury.

While W. E. Farrell, an attorney employed by the legal firm conducting the defense, was upon the witness stand in behalf of defendant, the following questions were asked on cross-examination:

"Q. And you are, of course, active in assisting in procuring the facts in the cases in which his firm are interested, are you not?

"A. Occasionally that is a part of my duty.

"Q. Isn't it your duty always?

"A. No; that constitutes a very small part of my work, Mr. Idleman.

"Q. I mean the class of cases such as we have here?

"A. My duty?

"Q. Yes.

"A. What distinguishment do you make between the class of cases here and the balance of the work? I presume three-quarters of the time is in other classes of work. This forms but a very small part of it.

"Q. Well, what I am trying to get at is whether it is in cases in which the clients are protected by insurance."

To negative the claim that the foreign substance extracted from plaintiff's eye was a splinter from a steel chisel, defendant showed by Dr. Connell that he applied it to a large electric magnet, and that it was not attracted thereby, whereas the piece introduced in evidence and shown to the jury was readily attracted by a small magnet. Another witness, shown to be familiar with the magnet used by Dr. Connell, was asked, over objection of defendant's counsel, what would be the effect on an electric magnet if it should get out of order or the current should not be connected, and he testified that in such a case the magnet would not attract. It is claimed that the admission of this testimony was error.

No evidence was introduced as to the reasonable value of the medical and surgical services rendered to plaintiff, and the court was requested to withdraw this part of plaintiff's case from the jury, but refused to do so.

The jury returned a verdict for $11,300. A motion to set aside the verdict as excessive was overruled, and plaintiff had judgment. Defendant appeals.

AFFIRMED.

For appellant there was a brief over the names of *Messrs. Wilbur & Spencer* and *Messrs. Williams, Wood & Linthicum*, with oral arguments by *Mr. Ralph Wilbur* and *Mr. I. D. Hunt*.

For respondent there was a brief and an oral argument by *Mr. Cicero M. Idleman*.

MR. JUSTICE MCBRIDE delivered the opinion of the court.

1, 2. It has been frequently held that a willful attempt by a plaintiff in a personal injury case to show that the defendant was protected by insurance constitutes reversible error. The ground for this holding is that a knowledge that the defendant has such protection might have a tendency to render jurors careless as to the amount of the verdict. · But the rule is not universal. In the case at bar the witness was an attorney, and the fact that as such and acting for an insurance company he had procured a statement from a prospective witness in regard to certain facts was admissible to show his motive and interest in the case. An objection to the question was sustained, and there is no probability that the incident had any effect upon the minds of the jury. Where such questions are improperly asked, with the intent to get before the jury a fact not material to the case,· the court should penalize the party guilty of such misconduct by discharging the jury. But in this case the· question asked was one which might naturally suggest itself under the circumstances, and does not seem to have been dictated by a desire to excite that prejudice, which many jurors seem to entertain against insurance companies, and, as before observed, was not asked in a manner likely to have had such an effect.

3. The question asked Dr. Ong, in relation to what the effect would be in producing a magnet if the wire or connection between the magnet and the electricity were

not connected or out of order, was not improper. The theory of the defense was that the piece of metal which entered plaintiff's eye was from a manganese casting, and that such a substance would not be attracted by a magnet. The piece of steel presented by plaintiff and which the testimony of his witnesses tends to show was the identical one extracted from his eye was readily attracted by a common magnet, as was demonstrated in the presence of the jury. Under these circumstances, the jury was entitled to know that there might be conditions under which the complicated electric machine of Dr. Connell would fail to attract steel. In fact, there can be but one conclusion from the testimony—either that plaintiff's witnesses were trying to foist upon the jury a piece of metal different from that which injured him, or that from some unexplained cause Dr. Connell's magnet did not work properly. It was proper for the jury to understand the difference between a machine of that complicated character and the common horseshoe magnet exhibited to them, which possesses in itself the quality of attraction.

It is noteworthy also in this connection that experiments performed in the presence of the jury upon pieces of manganese steel showed that that substance was likewise attracted by a common magnet, and, reasoning from the effect to the cause, it seems highly probable that Dr. Connell's magnet was in some manner out of order when the first experiment was made.

4. The court should have withdrawn the question of special damage for medical attention from the consideration of the jury. The rule is that a plaintiff in a case involving personal injuries can recover, as a part of his damages, his reasonable expenses for medicines and medical treatment, but there must be some evidence that the charges are reasonable. *International & G. N. R. Co.* v. *Boykin,* 32 Tex. Civ. App. 72 (74 S. W. 93) ; *Amann* v.

*Chicago Consol. Traction Co.,* 243 Ill. 263 (90 N. E. 673) ; *Wheeler* v. *Tyler, S. E. Ry. Co.,* 91 Tex. 356 (43 S. W. 876).

5. This would lead necessarily to a reversal of the case were it not for the fact that the amounts claimed are definite, and can easily be separated from the rest of the recovery, and it is evident that under the instructions the jury could do but one thing, namely, find for plaintiff for the full amount of the bills. Plaintiff should be required, therefore, to remit the amount of these bills from the amount of his judgment.

6. It is claimed that the verdict is for an excessive amount, and instances are adduced where verdicts in much smaller amounts for injuries of like character have been set aside as excessive. The evidence indicates that the plaintiff suffered great pain for the greater part of a year, and that the sight of the other eye has been affected sympathetically to some extent, and we are not prepared to say that under the particular circumstances of this case the verdict is excessive. This court has always held that the question of excessive damages was a matter solely for the trial court, and its refusal to set aside a verdict on that ground would not be reviewed here. *Nelson* v. *O. R. & N. Co.,* 13 Or. 142 (9 Pac. 321) ; *McQuaid* v. *P. & V. R. R. Co.,* 19 Or. 535 (25 Pac. 26) ; *Adcock* v. *Oregon R. Co.,* 45 Or. 181 (77 Pac. 78) ; *Wolf* v. *City Ry. Co.,* 50 Or. 80 (85 Pac. 620: 91 Pac. 460: 15 Ann. Cas. 1181).

It is therefore ordered that, if the plaintiff shall within 30 days remit the amount claimed for medical attendance and nursing, erroneously submitted to the jury, and aggregating the amount of $950, the judgment will be affirmed as to the residue, but that, failing to do this, the judgment will be reversed.

AFFIRMED CONDITIONALLY: REHEARING DENIED.