Argued and submitted June 10, reversed and remanded July 31, 1996

Tanya D. KING;
Dawn King, a minor; and James King, a minor,
by and through their guardian ad litem, Tanya D. King,
*Respondents,*

*v.*

OREGON DEPARTMENT OF HUMAN SERVICES,
ADULT AND FAMILY SERVICES DIVISION,
*Appellant.*

(94-CV-0190-MS; CA A88762)

921 P2d 1326

Jas. Adams, Assistant Attorney General, argued the cause for appellant. With him on the briefs were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Bruce J. Brothers argued the cause for respondents. With him on the brief were Lawrence M. Gorman and Brothers, Steelhammer & Ash.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LEESON, J.

### LEESON, J.

In this declaratory judgment action, defendant appeals from a summary judgment for plaintiff Tanya D. King. Because we conclude that the trial court erred as a matter of law, ORCP 47 C, we reverse and remand.

The facts are undisputed. On March 10, 1993, plaintiff and her two minor children were seriously injured in a motor vehicle accident. Before and after the accident, plaintiff received public assistance and medical benefits from defendant, the Oregon Department of Human Services, Adult and Family Services Division (AFSD). Plaintiff settled her accident claim for $75,000. AFSD then asserted a lien against her settlement proceeds for $16,482.24, the amount that plaintiff had received from AFSD from the date of the accident to the date of settlement.[1] Defendant acted pursuant to ORS 416.540, which provides:

"(1)  Except as provided in subsection (2) of this section and in ORS 416.590, the Adult and Family Services Division shall have a lien upon the amount of any judgment in favor of a recipient or amount payable to the recipient under a settlement or compromise for all assistance received by such recipient from the date of the injury of the recipient to the date of satisfaction of such judgment or payment under such settlement or compromise.

"(2)  *The lien does not attach* to the amount of any judgment, settlement or compromise to the extent of attorney's fees, costs and expenses incurred by a recipient in securing such judgment, settlement or compromise and *to the extent of medical, surgical and hospital expenses incurred by such recipient on account of the personal injuries for which the recipient had a claim.*" (Emphasis supplied.)

Plaintiff sought a declaration that the AFSD lien did not attach to any of her settlement proceeds. She claimed that the $75,000 settlement was more than exhausted by deductions of $25,000 for attorney fees, $652.58 for litigation costs and expenses, and $51,060.65 for medical expenses,

---

[1] Our opinion refers only to plaintiff Tanya King. On April 21, 1995, plaintiff and her children entered into an agreement under which AFSD agreed to release its liens as to the settlement proceeds of the children.

leaving nothing to which AFSD's lien could attach. Defendant responded that the proper deduction for plaintiff's incurred medical expenses was $6,163, not $51,060.65, because all but $6,163 was paid either by Medicaid or by plaintiff's private insurer. According to defendant, after deducting $25,652.58 for attorney fees and costs, $15,000 owed to plaintiff's private insurer and the $6,163 for medical expenses paid by plaintiff, plaintiff's net settlement was $28,184.42, which was more than enough to satisfy the $16,482.24 lien.

On cross-motions for summary judgment, the trial court granted summary judgment for plaintiff. It reasoned:

"Incurring an expense is not the same as paying it. If the legislature meant to give the state a lien on the portion of the incurred medical bills which the recipient did not pay, it knew how to say so, and it did not. The statute is unambiguous, and under the undisputed facts of this case the proceeds are exempt from the lien of the state."

On appeal, defendant argues that the trial court erred as a matter of law in its interpretation of ORS 416.540. Defendant contends that under ORS 416.540(2), it has a valid lien on plaintiff's settlement proceeds, because

"[m]edical expenses paid by Medicaid or a third party are not 'incurred' by the Medicaid recipient and hence are not eligible to be deducted from a tort settlement before a Medicaid lien can be imposed on the proceeds."

Plaintiff responds that

"[a]pplying a natural, plain and obvious meaning to the word 'incurred,' it is clear that the proceeds of plaintiffs' personal injury settlements are not subject to [AFSD] liens."

Resolution of this case involves determining the meaning of "incurred" in ORS 416.540(2) as it relates to plaintiff's medical, surgical and hospital expenses. In construing a statute, we attempt to discern the legislature's intent, looking first to the text and context. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). We give words of common usage their plain, natural and ordinary meaning, unless otherwise defined by statute.

*Id.* If our examination of the text in context does not reveal the intentions of the legislature, we consult the legislative history. *Id.*

■ Here, the parties agree that the term "incur" means "to become liable or subject to." They disagree about whether the term's use in ORS 614.540(2) refers to the total amount of a welfare recipient's medical expenses or only to the amount for which the recipient is personally liable. Plaintiff contends that the plain language of the statute indicates that the legislature "intended portions of a personal injury recovery to be exempt from lien claims." According to her, "it is not unreasonable that the legislature determined to exempt an amount equal to the medical bills incurred from the monies AFSD is entitled to lien." Defendant argues that the "core policy" of ORS 656.540(2) is to permit a lien to be asserted against third-party tort recoveries in order to relieve the burden on the general citizenry of financially supporting public assistance programs. Consequently, defendant contends, the phrase "medical expenses incurred by the recipient" means "only those expenses which the welfare recipient is legally obligated to pay or has already personally paid."

Both interpretations of the term "incurred" as used in the phrase, "medical expenses incurred by the recipient," are plausible. The term is not defined by the statute, and nothing in the text or context resolves the parties' disagreement. Context clarifies only that the date of settlement is the relevant time for determining the amount of medical expenses a welfare recipient has incurred. *See, e.g.,* ORS 416.600 (the date on which a judgment, settlement or compromise has been entered is the date on which the amount of the AFSD lien is calculated). Because the intent of the legislature is not clear from our inquiry into the text and context of the statute, we turn to its legislative history. *PGE*, 317 Or at 611-12.

House Bill 503, which became ORS 416.510 *et seq*, was proposed by the State Public Welfare Commission (Commission) to address the inability of the Commission "to recover aid given [to tort victims] after the court settlement is made" (testimony of Jeanne Jewett, Administrator of State

Public Welfare Commission). Minutes, Senate Public Welfare and Institutions Committee, March 24, 1959, p 1. The purpose of the bill was to give the Commission the authority to recover from a welfare recipient's tort recovery "the amount of public assistance paid such [a] person from the time of his injury" because "if a person receives public assistance he should repay it from the sums he recovers for his injuries, at least from the time of injury" (letter from Jeanne Jewett, Administrator of State Public Welfare Commission, to Grace O. Peck, Chairman, House Public Health and Welfare Committee, January 19, 1959). Minutes, State Public Welfare Commission, Vol 1, January 30, 1959, p 83.[2] Only two amendments were made to the bill, neither of which addressed the issue of exempting portions of a personal injury recovery from lien claims.[3]

The legislative history of ORS 416.540 provides no support for plaintiff's contention that the legislature intended to exempt from the state's lien an amount equal to the total amount of a welfare recipient's medical bills. Instead, it supports defendant's contention that the intent of the legislature was to relieve some of the burden on public assistance programs by allowing liens to be asserted against welfare recipients' third-party tort recoveries. As used in ORS 416.540(2), we conclude that the term "incurred" refers to only those medical, surgical and hospital expenses that the recipient has paid or is legally obligated to pay at the time of settlement.

In this case, plaintiff was personally liable for medical, surgical and hospital expenses of $6,163, not $51,060.65. Her net settlement was $28,184.42. The trial court erred in granting plaintiff's motion for summary judgment.

Reversed and remanded.

---

[2] The January 19, 1959, letter was incorporated by reference into the legislative history. Minutes, House Public Health and Welfare Commission, January 21, 1959, p 2.

[3] One of the amendments removed a section that required welfare recipients to get written approval for any settlements of a claim. Minutes, House Judiciary Committee, March 5, 1959, pp 4-5. The other dealt with the relationship between the statute and the State Industrial Accident Commission. Minutes, Senate Judiciary Committee, April 16, 1959, pp 2-3.